of today, United States v. Christopher G. Wright, Numbers 13-1766, 1767, and 1768. Ms. Mathewson and Ms. Williams. While we're getting ready, this is the same panel that was on the previous case like this. I can tell you for, I hope, a fact that this was just luck of the draw. They don't pick, we don't pick them, they pick us, I guess, I don't know. Unless you, did you volunteer for this one? No, I didn't. How about you, Doug? As you say, or on luck of the draw, depending on your perspective. Whenever you're ready. Thank you, Your Honor. May it please the Court, as the panel knows, I'm Lisa Mathewson. It's my privilege to represent Appellant Christopher Wright, one of the defendants below. If I may reserve three minutes for rebuttal. That's fine. Your Honors, the first jury in this case necessarily determined that the defendants lacked the specific intent to commit bribery with respect to each official act and each thing of value on which they were acquitted. That finding means that using the acquitted conduct either as proof of intent or as an overact on retrial. My initial concern here, I'm just, do we have interlocutory jurisdiction? You do, Your Honor. Tell me how. Yes. First, of course, the government has conceded that the court has interlocutory jurisdiction over the question of whether it may use. I understand, but conceding ain't going to get it. We either do or we don't, no matter what anybody tells us. Certainly, Your Honor. And I've got a real concern as to whether we have interlocutory jurisdiction. Certainly. First, as to the use of the acquitted conduct to prove intent, that's squarely governed by ABNY. And the court has previously, in cases including the Enbank Regas opinion, for example, exercised interlocutory jurisdiction over an appeal on Ash Double Jeopardy grounds that would not require dismissal. I thought ABNY dealt with an account in an indictment on Double Jeopardy grounds. Yes, and that is why this case is not entirely governed by ABNY or by Regas, but in conjunction with Serafini, Your Honor, the court does have jurisdiction. And that is because Regas and ABNY stand for the proposition that when any count may be barred by Double Jeopardy, the court has interlocutory jurisdiction to prevent retrial. Maybe this is being too narrow, but I thought Serafini dealt with 3731, which gives the government, and it's the government, the unilateral right to seek interlocutory review of certain claims, namely those that seek to dismiss an indictment. That's true, Your Honor, and this is a different context. However, Serafini defined count to include any independent basis for conviction. And that's a doctrine that the court believed compelled by the Sanabria case, the Sanabria case of the Supreme Court, and later applied as well in Farris. Those were 3731 cases, but the concept that count is not limited to the discretionary charging choices that the prosecution has made, but rather includes each independent basis for conviction, that concept applies as well to this court's ABNY jurisdiction. Moreover, the entire concept of ABNY jurisdiction is an issue-based preclusion analysis. Virtually by definition, Your Honors, when the preclusion is issue-based, the court need not find that an entire count is precluded, but simply that an issue is precluded. Well, looking at this from higher up maybe, it almost seems as if what you're attempting to do on remand, after we remanded this, is you want to be sure, or as sure as you can, to see that conduct with respect to acquitted accounts doesn't come into evidence. And that's, in effect, asking us to tell the government how it can prosecute its case. I'm kind of reluctant to go there, especially when you have a chance. It's not like you lose the appeal right if you go to trial and you lose and you have an appeal. So I'm not sure, other than inefficiency, what is gained by having us do an interlocutory appeal when this case doesn't fit under ABNY directly, doesn't fit under Serafini directly. And I'm not sure, at least speaking for myself personally, I want to go there. Your Honor, it's an important, it's an illuminating question, because this appeal is not simply about which evidence the government may use to prove the case on retrial. This case is about which issues the government may ask the jury to pass on. In fact, even on the overt act question, which may at first blush appear to be a simple evidentiary question, the idea is that the second jury will be asked to determine whether these defendants had the purpose, that is the intent, of committing bribery when they engaged in the conduct as to which they were acquitted. That's why this is not simply a question of evidence. So the convictions were on what, counts 1, 3, 10, and 12 initially? The convictions were 1, 3 as to one defendant, Mr. Chawla only, acquittals as to Mr. Teitelman and Mr. Wright, 10. And 12. And 12, which is a traditional money or property count, not an issue in this appeal. And which ones, we're back on which particular counts are now being tried again? Count 1, Your Honor, which is conspiracy count as to the three appellants who are here. Count 3 as to Mr. Chawla only. Count 10 as to, I believe, the three of them. And count 12, which will be retried regardless because that's a traditional money or property fraud count, not an issue. And to prove the counts that will be presented to a jury on retrial using acquitted conduct will require that second jury to make the same determination that the first jury has already passed on, and that is whether these defendants had the specific intent to commit bribery, whether there was an intent of a quid pro quo exchange. That issue will be before the second jury whether the acquitted conduct is used as an overt act or whether it's used directly to prove intent. And that is because in both cases the question is what's in the defendant's mind. But doesn't a lot of your brief talk about precluding the governments from offering evidence of business transactions as overt acts, isn't that an evidentiary issue? It's not, Your Honor, because the overt acts are also going to require the second jury to determine the purpose, that is the intent issue. Overt acts are an element. And obviously being an element they provide an independent basis for conviction. That's part of the reason that this court has jurisdiction over them and that it's not a mere evidentiary question. But more importantly, the reason that the overt acts present the same issue as the direct proof of, say, a substantive count would, for example, is because as 371 says, as this court has elucidated in McKee, an overt act must be done for the purpose of achieving the illegal criminal objective. The illegal criminal objective here is bribery. That means that in order to use any of this conduct as an overt act, the government must ask this jury to determine that the defendant's engaged in that conduct with the purpose of bribery. That's what the first jury already found that they lacked. And that's why this question is not merely evidentiary but rises to the level of a constitutional issue and, in fact, is squarely governed by ad hoc jurisdiction. Do you know what the first jury found with respect to specific intent or criminal intent? Because there was only one argument that we made to the jury, Your Honor, and we've gone through this in great detail. The district judge disagreed, though, finding that in furtherance was in play. The district judge erred on that, Your Honor. Why? The district judge erred on that. I mean, that's an element of the crime. It certainly was an element. And, of course, the fact that there are multiple elements itself cannot preclude a finding of preclusion or else there would be no such thing as issue preclusion in the criminal context. We, of course, insisted that the jury be instructed on every element. But the only element that we contested, Your Honor, was the intent element. The district judge made a number of errors in that connection, one of which was to equate an attack on the content of a mailing with an attack on the mailing element, that is, the use of that mailing in furtherance. And Schmuck and numerous other cases have established that the content of the mailing is irrelevant to the furtherance question. Moreover, the only argument that we ever made was there was no scheme. A furtherance argument would have been even if there was a scheme, these mailings didn't further it. Not only did we never make that argument, and the Court will scrutinize the record as the Supreme Court insists, but that argument, frankly, would have made no sense whatsoever on this record. Just for one example. But isn't the jury entitled to acquit on that if they found it wasn't satisfied? Even if you didn't argue it? The jury is certainly entitled to, but it would be mere speculation to suggest that they did. And, in fact, no rational jury could have acquitted on that basis on this record. Just for one example, mechanical parking, for example, is one of the official acts on which the jury acquitted. One of the predicate mailings was an email informing co-defendants of the date for a hearing on the mechanical parking ordinance. No rational jury could have said there was a scheme with respect to mechanical parking, but this mailing didn't further it. And that's the case with each and every one of these mailings. So when the defendants attacked the mailings, and the district judge himself said, we attacked the content of the mailings. We argued that the mailings were innocuous, for example. That they did not demonstrate criminality. There was only one attack that we made. And that was, these mailings do not prove the intent to engage in a bribery scheme. So to equate that argument with a furtherance argument is error. Moreover, as the court will see in our briefing detailed, many of the examples that the district court cited as examples presumably, supposedly of the defense arguing an in furtherance element, didn't deal with predicate mailings at all. They were simply references either to other evidence that happened to be an email. There was a whole lot of email in the case. Every one of the points you're making could be brought up either to judge or before trial or at trial, correct? They could not be, Your Honor, because the right that we're here to enforce is the right not to stand trial on an issue on which we were already acquitted. And that's why Abney was decided to stand trial. Not to stand trial on an issue, okay. Not, the way I read it, the way I said it earlier, is not to have evidence come in with respect to the acquitted counts to try to show what you're trying, what the government is trying to show during the new trial. The right we're trying to enforce, Your Honor, is not the right to keep out certain evidence. The right we're trying to enforce is the right to avoid having a second jury determine issues that the first jury already determined. And to argue to the second jury that the defendants either had criminal intent with respect to the acquitted conduct or to use that acquitted conduct as an overt act, which requires finding criminal intent. Using your nomenclature, is it really issues that are going to be determined at the second trial, the actual issues, the counts, the acquitted? I didn't think so. I don't think so. It is, Your Honor. It's issues. And that's what Abney protected against. Well, even if you're right, why can't it be brought up? There's an old saying, don't do today what, don't decide today what can be decided tomorrow for tomorrow may not need to be decided. And you're asking us to decide something today that I'm not sure all of these issues are necessarily going to be before us if there is a trial, if you lose, and if you appeal. The right we're enforcing, Your Honor, is the right to avoid that second trial. It's the right to avoid standing up in front of the same jury, another jury, and making the very same arguments that we made. But that's not what the remand was when we had the case came out in 2012 or whenever it was. Is that right? I mean, we didn't say that you can't retry. Of course not. No, the issue preclusion analysis did have to be raised to the district court in the first instance, and it was. But the district court having declined to preclude or narrow the scope of the retrial on the issues on which we were already acquitted has created an issue over which this court has to talk. If the district court erred and you were to lose at retrial and appeal, it sounds like it could come up at that point in time. It could, but our right would already have been violated because our right is to avoid that second trial. All right. Let's hear from Ms. Williams, and we'll get you back on rebuttal. Good afternoon, Your Honors. I'm Jennifer Arbuteer Williams, and I represent the United States. I do believe that all of this boils down to one main question, and that is, can the defense prove what the jury necessarily decided in this case? I think Judge Van Aske asked exactly the right question. How do we know what the jury was basing its decisions on? The truth is we don't know. It is the government's position that there's jurisdiction to decide whether the government's precluded from introducing evidence of criminal intent, and it is the defendant's heavy burden, according to the Third Circuit decision in Regas, heavy burden to prove what the jury necessarily decided. If the defendants can't meet that burden, then the issue of overt acts becomes moot, and the case goes back for retrial. The earlier decision by this very panel. And I think there's been, they're going to retry all three defendants that remain, Challah, Tittleman, Tittlebaum, I guess. Tittleman and Mr. Wright, yes. Tittleman and also Wright. Yes, on the remaining counts. In this panel's earlier decision in this very case, the court was actually asked a somewhat similar question. And the government at that point was trying to convince this panel that any reasonable jury would have convicted the defendants on the bribery prong of honest services fraud. And what this panel ultimately concluded is that we can't know what the jury based its decision on. This court held that there was sufficient evidence to support a conviction under the bribery prong, but there was also ample evidence on which the jury could have convicted the defendants under the conflict of interest prong. Because the bottom line is, under this record, we don't know what the jury's rationale was, which is why the defendant's appeal must fail and why collateral estoppel does not apply in this case. So why do you concede that the intent issue is one that we do have jurisdiction over? Your Honor, my understanding of the case. You probably wouldn't think we were going to ask that, right? No, no. It's a very valid question, and I must say it's one that I really agonized over for a long time when I was writing these briefs. My understanding of the case law is that the collateral estoppel branch of the double jeopardy analysis really divides up into two categories. There is what I call the right not to be tried category, and then the evidentiary category. And I think the case law is clear that if it's the right not to be tried category, then there is interlocutory appellate jurisdiction, because otherwise the defendants have to go through trial. Double jeopardy? Yeah, okay. In this case, I think the defendants are raising one of each. I believe that the defendants' argument that the government should be precluded from introducing evidence of criminal intent with regard to these business transactions does fall into the right not to be tried category. Do you? Why don't you finish this question? The reason is that criminal intent is an essential element of the government's case. Without proof of criminal intent, the government cannot prove honest services fraud. And so without evidence of criminal intent, there would be no honest services fraud prosecution. That's why I think that part fits in the right not to be tried category. The over-the-axe portion of the argument really falls into the evidentiary category, because there it's not an issue of the defendants arguing they have a right not to be tried, but more the defendants arguing that they have a right not to be tried a particular way, which the case law says there is not interlocutory jurisdiction over. Well, isn't the whole thing? It seems like they're trying to prohibit the government from trying them in a certain way, putting in certain evidence. That is definitely true, Your Honor. But in the first branch of their collateral estoppel argument, they're trying to prevent the government from putting in any evidence of criminal intent with regard to these very broad, long-term business transactions. It still seems like what they're trying to do is curtail or eliminate, but most likely limit, the way in which you go about trying the case. The reason that I came out the way I did on this issue, Your Honor, was as I thought through what evidence they were trying to preclude, it was any evidence of criminal intent or any evidence of an essential element. And if they're trying to prevent the government from putting in the entire body of proof on an essential element, then I believe that falls in the right not to be tried. Let's assume that this was the first trial. Do they, and there's been no remand from any court of appeals. Do they have a right to an interlocutory appeal to say, to ask a court of appeals to rule on the issue you just talked about the very first time? No, Your Honor, because in that case, it would not be a double jeopardy right. It would simply be an evidentiary right. Because there has been a trial and there have been acquittals and convictions, it's a double jeopardy right. It's a right not to be tried. Understood. But your argument would be here to the district judge, double jeopardy is not involved here, correct? That's correct, Your Honor. I think that the defendant's attempt to claim that we know what the jury necessarily decided fails for several reasons. One reason is that at trial, the defense argued many different grounds for acquittal. They're here claiming that all of their arguments and all of the evidence really went to intent, but that wasn't the case at the time. The defense counsel did argue that the government failed to prove criminal intent, but that's not the only thing they argued. They also brought out evidence on – The main argument, though, right? It was certainly the main argument, but it was not the only argument. They argued that the value of benefits provided to Mr. Wright were really very low, that the apartments given to him had mice, that the promise of commissions were mere pie in the sky. That actually was a very big issue raised by the defense. That goes to whether or not a thing of value was provided to Mr. Wright. I don't know. I mean, I guess the other side could criticize your argument as saying, aren't you kind of cherry-picking snippets of the transcript to say other things were argued? Well, Your Honor, I think that's precisely the issue. And when I pointed out that the convictions indicate that the jury must have found some criminal intent at some point in time, the defense came back and said, well, but the jury could have decided those counts on the conflict of interest prompt. I think there could be a lot of theories that could explain why the jury ruled why it did, and that's not the issue. The issue is whether the defense can meet a very heavy burden of proving what the jury necessarily decided, necessarily decided, and they can't do that. A jury is entitled to rely on one piece of evidence among a vast pool of evidence in deciding why they decided the way they did. And we can't know how their analysis went. The defense cannot prove that the jury necessarily found no criminal intent. And, in fact, this panel did find sufficient evidence of criminal intent the last time you considered the case. So we can't know why the jury decided the way they did. And I do think the defendant's failure to look at the pattern of convictions is a real fatal flaw in their argument because the jury did convict on three honest services fraud counts in this case. One was a fraud that happened November of 2006, and one was May of 2007. There were acquittals in between those dates, and there were acquittals after the May 2007 date. It does not make rational sense that the jury found criminal intent for the counts of conviction and did not find criminal intent on the counts of acquittal. So the defendant's theory really fails because they did not look at the convictions. I also want to point out that the defendant's argument here is very overbroad. There were, the defense will have you look at an acquittal that is a single wire, an email, related to a very large long-term business transaction. And they are arguing that that proves the jury found no criminal intent with regard to the entire business transaction. That argument is not rational. One does not follow from the other. And it's really contradicted by the fact that the jury did convict Mr. Chawla, for example, on one count relating to the River City project, and then acquitted him on others. So there are many reasons why the defendant's argument fails to meet their heavy burden. And so even though the government does believe this fits within the court's interlocutory jurisdiction, it does not have merit, and this argument should be rejected. Any conjecture as to why there were so many acquitted counts at the first trial? Your Honor, I don't know. I really don't know why that is. There were four defendants, four defense attorneys, all raising many arguments about the meaning of the emails, the importance of the emails, what the defendants were doing, what they were intending, the value of the benefits, the value of Mr. Wright's services, whether he just made a few phone calls, or whether he did something more, whether he actually accomplished anything. As I recall, wasn't he essentially saying that he was just trying to help out, in effect, constituents? Mr. Wright did defend this case in part by saying he was simply doing his job. Okay. Any good defense attorney is going to raise every possible defense, every weakness in the government's case, and hope that the jury will acquit on any one of those grounds, and that's what defense counsel did here. So to come here today and say it all boils down to intent really ignores the reality of the trial. On the issue of the overt acts prong, again, this court only gets to that if the court finds that there is jurisdiction to hear the first portion of the double jeopardy argument on criminal intent and finds that the jury necessarily found no criminal intent. Only if this panel finds those things do we even get to the issue of overt acts. It's my position that there is no interlocutory jurisdiction to hear that portion of the collateral estoppel claim because that fits squarely within the evidentiary part of that body of law. Serafini is, in fact, a distinguishable case. That was a government appeal, and the government has And I thought 3731 only can be a government appeal, right? Yes. And the government has more interlocutory appellate rights than the defense  So the government can appeal granting of a suppression motion. The government can appeal dismissal of account. And the issue in Serafini was whether the government could appeal a portion of account if a portion of account is dismissed. And the court found that the government could appeal in that circumstance if the portion of account did constitute a separate legal ground of criminal culpability. In this case, not only is it not a government appeal, but an overt act is not a separate ground for criminal culpability. The government could not indict the defendant on the overt acts separately from one another. So even if the defense is correct that the government should be precluded from proving criminal intent, the government is not precluded from introducing these business transactions as overt acts even if the court were to find appellate jurisdiction. Because overt acts are not a separate crime. As the defendant said, overt acts do not need to be criminal. They do not need to be accompanied by criminal intent. They are simply proof that a conspiracy went from beyond a mere thought to an actual action. And that is why circuits uniformly upheld that even acquitted conduct can serve as an overt act. But again, it's the government's position that there is not jurisdiction because that's really an evidentiary argument and one that should be raised after the retrial in this case. Unless the court has further questions. No further questions. Thank you. Thank you very much. Ms. Mathewson. To return briefly to Judge Ambrose's jurisdictional question, there's an important distinction between ABNY collateral order jurisdiction and traditional collateral order jurisdiction. Your honors may, of course your honors know, that in the typical case, the court cannot hear an interlocutory appeal unless the issue is effectively unreviewable, which is the point that Judge Ambrose's question is getting to. However, the Supreme Court in ABNY said that doctrine does not apply in double jeopardy cases where the right is the right to avoid the relitigation of the same issue. Ms. Williams is absolutely correct that we don't know why this jury convicted, but we absolutely do know why this jury acquitted. And the jury acquitted because it found no specific intent to engage in either the official action or the thing of value, to engage in bribery with either official action or the things of value that were the topic of each acquitted count. And we know that the jury found that for a couple of reasons. First, the structure of the indictment, the structure of honest services fraud before skilling, was that the jury would convict if it found either a conflict or bribery. So when the jury acquitted, we know that the jury found no bribery. Part of the problem that I have, you're saying that we have jurisdiction to review your collateral estoppel claims, but I'm looking at page 16 of your opening brief in which you say that if your clients, only that if your clients have been successful before the district court, quote, the multifaceted conspiracy count would only be narrowed. So it doesn't sound like it's a, it still sounds to me like what you're trying to do is narrow how the government is to go about presenting its case. Your Honor, it will be narrowed by issues and not merely by evidence. And that's why this is a collateral estoppel claim that extends to the overt acts, because it will be narrowed insofar as the second jury will be precluded from reconsidering the same issue that the first jury necessarily acquitted on. And that is the specific intent to engage in bribery with respect to each of these transactions. Granted, as the district court pointed out, we use different language below. And you have to use different language when you speak to a jury. We said there's no link. We said there's no connection. We said one has nothing to do with the other. Those were intent issues. In fact, this very panel, when reviewing the evidence in the first appeal, identified arguments like rights job duties, like the friendship among the defendants, as intent arguments, which is exactly what they were, intent arguments in the context of the facts of this case. The first jury necessarily decided in the defendant's favor on that. And these defendants should not face a second trial in which a second jury considers the same issues. Thank you very much. Thank you to both counsel for very, very well presented arguments. And we'll take the matter under advisement. Recess until tomorrow morning.